<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT<br>
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JERRY WOODELL, et al.,<br><br>         Plaintiffs,<br><br>         v.<br><br>ETHICON, INC., et al.,<br><br>         Defendants. | Civil Action No. 15-7669 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

<u>SHIPP, District Judge</u>

This matter comes before the Court on the motion of Plaintiff Jerry Woodell, individually and as proposed administrator of the Estate of Bethann Woodell, ("Plaintiff") to transfer this case to the United States District Court for the Central District of California, Western Division. (ECF No. 10.) Defendants Karl Storz Endoscopy-America, Inc. and Karl Storz Endovision, Inc. ("Moving Defendants") filed a cross-motion to dismiss Plaintiff's Amended Complaint and opposition to Plaintiff's Motion to Transfer Venue (ECF No. 19), and Plaintiff replied (ECF No. 26). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's motion to transfer to the Central District of California is denied, Moving Defendants' cross-motion to dismiss is denied, and Moving Defendants' alternative request to transfer this action to the Middle District of North Carolina is granted.

I.     <u>Background</u>

This matter arises from the use of a medical device called a morcellator during laparoscopic uterine surgery. (*See generally* Am. Compl., ECF No. 6.) Plaintiff contends that

the use of the morcellator during his wife, Bethann Woodell's ("Ms. Woodell") surgery on

March 7, 2012 (the "Surgery"), "caused the spread and upstaging of occult (i.e., hidden) cancer

and, ultimately, lead [sic] to [Ms. Woodell's] death." (*Id.* ¶¶ 2, 14.)  On October 30, 2012, Ms.

Woodell underwent an outpatient MRI, which revealed that she had three large cancerous masses

in her pelvis.  (*Id.* ¶ 18.)  Thereafter, Ms. Woodell underwent surgical and medical treatments,

which included several rounds of chemotherapy; however, her cancer continued to spread, and

on September 9, 2015, Ms. Woodell passed away.   (*Id.* ¶¶ 19-29.)

Following Ms. Woodell's death, on October 22, 2015, Plaintiff, individually and as

administrator of Ms. Woodell's estate, filed a personal injury action in this Court against

multiple defendants including several companies whose principal place of business is located in

New Jersey.  (Compl. ¶¶ 3, 5, 6, 11, ECF No. 1.)  In the complaint, Plaintiff alleged that these

companies, Ethicon, Inc., Johnson & Johnson Services, Inc., and Vention Medical Acquisition

Inc. (collectively "New Jersey Defendants"), among others, "were careless, reckless, negligent . .

. in researching, designing, developing, testing, manufacturing, packaging, labeling, marketing,

advertising, promoting, distributing, selling, making available and/or placing into the stream of

commerce, gynecologic products, including Laparoscopic Power Morcellators . . . ." (*Id.* ¶ 171.)

Thereafter, on December 29, 2015, Plaintiff voluntarily dismissed his claims against the New

Jersey Defendants, among others, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil

Procedure.  (ECF No.  5.)  On that same day, Plaintiff filed an Amended Complaint, which

asserted claims against only Moving Defendants and Karl Storz GmbH & Co. KG (collectively

with Moving Defendants, "Defendants").  (Am. Compl. ¶¶ 113-261.)  None of the Defendants

are incorporated or maintain a principal place of business in New Jersey.  (*Id.* ¶¶ 3-5.)   In

addition, in the Amended Complaint, Plaintiff does not allege that the Surgery or any of Ms.

2

Woodell's subsequent medical treatment for medical problems allegedly caused by the Surgery took place in New Jersey.   Rather, Plaintiff alleges that the Surgery and Ms. Woodell's subsequent medical treatment took place in the Middle District of North Carolina, where she and Plaintiff resided and where Plaintiff continues to reside.   (*Id.* ¶¶ 1, 2, 14, 16, 19.)

In his motion to transfer, Plaintiff argues that this action should be transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California, Western Division, because:   "the facts at issue in this litigation arose in this district," "[k]ey liability documents are located within the Central District of California," "[t]he Central District of California has a relatively less congested docket than the Districts [sic] of New Jersey and North Carolina," and "[l]ocal interest and public policy favor applying California law to some of the issues in this litigation."   (Pl.'s Moving Br. 1, ECF No. 11.)   In addition, Plaintiff explained the reason for his original choice of venue:

> Plaintiff filed this complaint to protect the timeliness of his claim prior to ascertaining the identity of the manufacturer of the power morcellator used during [the Surgery].   New Jersey was the chosen forum because Ethicon and Johnson & Johnson Defendants, who have since been dismissed from the case, have their principal places of business in the State of New Jersey, and manufactured and sold the great majority of power morcellator devices that had been on the market.

(*Id.* at 3.)   Furthermore, Plaintiff asserted that after filing the complaint in this Court, he "obtained records which indicated that a Karl Storz Rotocut G1 Tissue Morcellator was used during [the Surgery]."   (*Id.* at 4.)   Thereafter, he dismissed Ethicon and Johnson & Johnson, among other companies, and filed the Amended Complaint asserting claims against Defendants. (Am. Compl. ¶¶ 3-5.)   Accordingly, Plaintiff asserts that "New Jersey is no longer an appropriate venue because the now dismissed New Jersey defendants were not the manufacturers of the product used in [the Surgery].   Instead, the more appropriate venue is California, the home state

3

of Defendant Karl Storz Endoscopy-America, Inc." (Pl.'s Moving Br. 4.)  In their opposition and cross motion to dismiss, Moving Defendants argue that the Amended Complaint "must be dismissed for lack of personal jurisdiction and improper venue or, in the alternative, transferred to the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1406." (Defs.' Opp'n Br. 5, ECF No. 19.)

## II.      Legal Standard

A federal district court may transfer a civil action to a different venue under 28 U.S.C. §§ 1404(a) or 1406(a).  Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  Section 1406(a) provides "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  The Third Circuit has explained that "Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper.  Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).

## III.      Analysis

Although Plaintiff brought this motion pursuant to § 1404(a), he has admitted that New Jersey is not a proper venue for this action.  (Pl.'s Moving Br. 4.)  Specifically, Plaintiff has asserted that New Jersey "has no connections to the parties or the facts at issue in this litigation." (*Id.* at 6.)  New Jersey, then, is not a permissible venue with respect to the Amended Complaint

under either 28 U.S.C. §§ 1391(b)(1) or (b)(2), which provide that venue is proper in the judicial

district where any defendant resides or where a substantial part of the events or omissions giving

rise to the claim occurred.   28 U.S.C. §§ 1391(b)(1), (2).   Nor does venue lay in this district

pursuant to § 1391(b)(3), which applies only when "there is no district in which an action may

otherwise be brought." 28 U.S.C. § 1391(b)(3).   Plaintiff could have brought this action in the

Middle District of North Carolina–where the Surgery and the purchase of the medical device

giving rise to this action occurred. *See* 28 U.S.C. § 1391(b)(2).   Thus, New Jersey is not a proper

venue for this action, and Plaintiff's motion must be considered under § 1406(a).

The Third Circuit has noted that § 1406(a)'s "transfer provision is designed to preserve

claims that rigid application of dismissal rules may bar." *Lafferty v. St. Riel*, 495 F.3d 72, 79 (3d

Cir. 2007) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)). Thus, even in the

absence of personal jurisdiction over a defendant, a court may transfer a case pursuant to

§ 1406(a). *Goldlawr, Inc.*, 369 U.S. at 466 ("The language of [§] 1406(a) is amply broad enough

to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as

to venue, whether the court in which it was filed had personal jurisdiction over the defendants or

not."). "If by reason of the uncertainties of proper venue a mistake is made, Congress, by the

enactment of [§] 1406(a), recognized that 'the interest of justice' may require that the complaint

not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by

what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating

technicalities.'" *Id.* at 467. Therefore, "[t]ransfer is generally more in the interest of justice than

dismissal." *Boily v. Walt Disney World Co.*, No. 08-4967, 2009 WL 1228463, at *8 (D.N.J. May

1, 2009) (citing *CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.*, 650 F. Supp. 57, 60 (D. Vi.

1986)). Here, notwithstanding Plaintiff's approach of naming thirty-six corporate defendants to

try to cover all morcellator manufacturers before ascertaining the identity of the manufacturer of the morcellator used in the Surgery, the Court does not find that Plaintiff acted in bad faith and the Court finds that it is in the interest of justice to transfer rather than dismiss this action. Accordingly, the Court denies Moving Defendants' cross-motion to dismiss.

Having found that transfer is appropriate under § 1406(a), the Court turns to the next issue:  where to transfer this case.  In his motion, Plaintiff argues that this action should be transferred to the Central District of California, Western Division (Pl.'s Moving Br. 1), and in their opposition, Moving Defendants argue that, if this action is not dismissed, it should be transferred to the Middle District of North Carolina (Defs.' Opp'n Br. 16-17).

In contrast to a § 1404 analysis, under which a court must look at several factors addressing the private and public interests involved, "[a] court determining whether to transfer an action under § 1406 need not address these specific factors, and indeed some of them do not apply." *de Rojas v. Trans States Airlines, Inc.*, 204 F.R.D. 265, 269 (D.N.J. 2001). "A [c]ourt transferring venue under § 1406 must simply determine a venue in which the action originally could have been brought that serves the interest of justice." *Id.*  Here, the action originally could have been brought in the Middle District of North Carolina where the Surgery occurred, the subject morcellator was purchased, and Ms. Woodell received treatment for medical issues allegedly caused by the morcellator. (Am. Compl. ¶¶ 1, 14, 16, 19, 125, 126, 200.)  In addition, North Carolina has an interest in enforcing its consumer protection laws to protect its citizens. Furthermore, the Court does not find that the Central District of California is a superior forum, simply because one of the Moving Defendants is a resident of California (Pl.'s Reply Br. 14, ECF No. 26) and other product liability cases regarding morcellators are allegedly pending in California state courts (*id.* at 15).  Because venue in the District of New Jersey is improper and

6

no other proper venue appears to have the same connection to the controversy as the Middle District of North Carolina, the Court grants Moving Defendants' request to transfer this case to the Middle District of North Carolina. [1]

## IV.  Conclusion

For the reasons set forth above, Plaintiff's motion to transfer to the Central District of California is denied, Moving Defendants' cross-motion to dismiss is denied, and Moving Defendants' alternative request to transfer this action to the Middle District of North Carolina is granted.  An order consistent with this Memorandum Opinion will be entered.

*Mashipp*

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: August 24, 2016

---

[1] The Court would reach the same decision pursuant to § 1404(a), which grants the Court discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (internal quotation omitted). While courts may consider all relevant factors, generally they must weigh both private and public considerations. *Jumara*, 55 F.3d at 879.  Under a § 1404(a) analysis, Plaintiff's new choice of venue would not be afforded much weight since Plaintiff originally chose to file suit in New Jersey.  Moving Defendants' preference would weigh against transfer. Significantly, this action arose from the use of a medical device, which was purchased in North Carolina, used in North Carolina, and allegedly caused the death of a resident of North Carolina, who received medical treatment for medical issues, allegedly caused by the device, in North Carolina.  (Am. Compl. ¶¶ 1, 14, 16, 19, 125, 126, 200.) Therefore, the Middle District of North Carolina is where a substantial part of the events giving rise to the claim occurred. This factor would strongly weigh in favor of transfer. In addition, in the Amended Complaint, Plaintiff asserts claims under the North Carolina Consumer Practices Act, which a trial judge in North Carolina is likely to have greater familiarity with and a greater interest in enforcing as compared to a judge in the Central District of California. (*See id.* ¶¶ 195-216.)